UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ROBERTA L., : | |
|     Plaintiff, : | |
| : | |
| v.  : | C.A. No. 23-234-PAS |
| : | |
| MARTIN O'MALLEY, : | |
| Commissioner of Social Security, : | |
|     Defendant. : | |

# REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

With an alleged onset date of September 30, 2019,[1] on September 12, 2021, Plaintiff Roberta L. ("Plaintiff"), then aged 64, applied for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"). Plaintiff is a college educated woman who worked as a bookkeeper/office manager for many years until she stopped due to breast cancer. Tr. 95-96. After treatment in that included a 2015 mastectomy and a year of chemotherapy, Plaintiff's cancer entered remission and she returned to work, but continued to suffer from nausea, which affected her ability to concentrate and remember; in September 2019, the record variously reflects that she "was laid off" and/or her employer "let her go." Tr. 97, 266.

On application, Plaintiff alleged disability due the impact of this ongoing and chronic nausea, as well as depression and anxiety, on her ability to concentrate and attend sufficiently well to sustain work. An administrative law judge ("ALJ") found that Plaintiff was able to work at simple, one-to-three-step tasks in reliance on the findings of two non-examining psychologists and two non-examining physicians, as well as on the medical record's large normal findings on mental and physical examination and Plaintiff's descriptions of her "myriad activities." Tr. 22.

---

[1] Plaintiff amended her alleged onset-of-disability date on application (May 1, 2021) to September 30, 2019, at the hearing held on June 28, 2022. Tr. 93.

The ALJ discounted both the opinions of Plaintiff's treating APRN Joanne Calise and Plaintiff's own subjective statements because both materially conflict with the other substantial evidence of record, as well as because APRN Calise's opinion is insufficiently supported.  Despite the submission of additional evidence, the Appeals Council denied review.

Now pending before the Court is Plaintiff's motion for reversal of the determination of the Commissioner of Social Security ("Commissioner").  ECF No. 12.  Arguing *inter alia* that the ALJ did not properly account in his RFC[2] for absenteeism, Plaintiff asks the Court to remand for an award of benefits or alternatively for further proceedings.  The Commissioner has filed a counter motion for an order affirming the ALJ's decision.  ECF No. 14.  Both motions have been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Because I find that the ALJ's decision, at both Step Two and in setting the RFC, is appropriately supported by substantial evidence and untainted by errors of law, as well as that the material presented to the Appeals Council reflects mostly normal findings with no evidence of absenteeism, I do not credit Plaintiff's argument that this case is controlled by Sacilowski v. Saul, 959 F.3d 431, 433, 440-41 (1st Cir. 2020), and its progeny.  See, e.g., Ogannes B. v. Kijakazi, C.A. No. 22-325WES, 2023 WL 5561108, at *12 (D.R.I. Aug. 29, 2023), adopted by text order (D.R.I. Sept. 13, 2023); Jacquelyn V. v. Kijakazi, C.A. No. 21-314MSM, 2023 WL 371976, at *5 (D.R.I. Jan. 24, 2023), adopted by text order (D.R.I. Mar. 7, 2023).  Therefore, I recommend that the ALJ's decision be affirmed.

I.      **Procedural and Factual Background**

---

[2] RFC refers to "residual functional capacity."  It is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

2

During the fourteen-month period prior to the period in issue, Plaintiff was working as an office manager/bookkeeper and was being treated for chronic nausea by her primary care physician, Dr. Priya Bansal, and her gastroenterologist, Dr. Robert Wolfgang, as well as for depression/anxiety.  Tr. 317-24, 429-64.  The nausea had been triggered by a clinical trial of chemotherapy to address breast cancer in 2014-2015.  Tr. 317-24, 429-64.  During this period in 2018 and 2019, treating notes reflect that the nausea was intermittent, with good days and bad, but Plaintiff's physical examinations were normal with "no muscle wasting" and she was "well-nourished and hydrated."  E.g., Tr. 317, 437, 439, 453, 455.  During this period, Plaintiff was also treated with medication for "mild" depression," which Dr. Bansal noted was stable.  Tr. 437, 440.  During this period, Plaintiff sometimes reported nausea and sometimes reported none, Tr. 433, 439, and consistently reported no heartburn, vomiting, abdominal pain, diarrhea or constipation.  Id.  At the appointment with Dr. Bansal in September 2019, just before "[Plaintiff] was laid off" from her job on September 30, 2019, Tr. 226, he noted that she was "doing well overall," that her physical examination was normal, that her chronic nausea was "stable" on medication, that anxiety and depression were "[d]oing well on medications," and that her weight was up to 130.  Tr. 429-32.  The Court observes that these treating notes appear to clash materially with Plaintiff's testimony at the ALJ hearing that during the same period in 2019, she was having nausea that affected her memory and ability to concentrate, that her "employer knew how sick [she]was," that the "medications . . . weren't working," and that she was so nauseous that she missed work or left early "a couple of times a month, at least," causing her employer to let her go.  Tr. 96-99.

After Plaintiff stopped work, the record before the ALJ reflects a seven-month treatment gap.  The next medical appointments for physical health are one in May and one in December

3

2020 relating respectively to skin lesions and the question of sleep apnea (which was explored but not diagnosed).[3] Tr. 332, 343. Also in May 2020, Plaintiff began to see APRN Calise approximately once a month or every two months for mental health medication management. Tr. 304. The latter's notes in 2020 (and throughout 2021) reflect no objective mental status examinations ("MSEs")[4]; rather, they appear to contain only Plaintiff's subjective reports. E.g., Tr. 304 ("Nausea – It lasts during most the day – no one knows why"). In August 2020, Plaintiff told APRN Calise, "I feel good on my meds." Tr. 301. At the end of 2020, APRN Calise noted Plaintiff's report that she "gets nauseous once in a while" and that she was looking for work, which was causing stress. Tr. 299.

Except for monthly medication management appointments with APRN Calise, Plaintiff had another treating gap in early 2021. In March 2021, she had her annual appointment with Dr. Bansal, who noted diagnoses of "chronic stable depression" and "chronic nausea" that Dr. Bansal described as "psychogenic"; with a 16 pounds weight loss since September 2019, Dr. Bansal referred Plaintiff to her gastroenterologist, Dr. Wolfgang. Tr. 327-30. Plaintiff was seen a few days later in Dr. Wolfgang's office for chronic nausea by APRN Karen Schaffran, whose physical examination yielded normal findings, including "no muscle wasting," as well as no report of "vomiting, wgt changes or changes in bowels." Tr. 315. In April 2021, Dr. Wolfgang performed a colonoscopy, Tr. 340, and in June 2021, he performed a "gastric emptying study,"

---

[3] The records submitted to the Appeals Council for the first time reflect another 2020 appointment with Dr. Marc Jaffe, a gynecologist, who observed that Plaintiff was calm, alert and oriented, with no mood disorder, and a normal physical examination. Tr. 74.

[4] A mental status examination ("MSE") is an objective assessment of an individual's mental ability based on personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. . . . Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Coulombe v. Colvin, C.A. No. 14-491ML, 2016 WL 1068875, at *2 n.3 (D.R.I. Feb. 19, 2016), adopted, 2016 WL 1069057 (D.R.I. Mar. 17, 2016) (quoting Roberts v. Astrue, No. 11cv5296–BHS–JRC, 2012 WL 834337, at *3 (W.D. Wash. Feb. 16, 2012)); see 20 C.F.R. § 404, Subpt. P., App. 1, § 12.00(D)(4).

4

which resulted in the diagnosis of gastroparesis based on "mild delayed gastric emptying of solids." Tr. 358. At a July 2021 telephonic appointment, Dr. Wolfgang assessed chronic nausea with "extensive eval in the past with no findings, failed mult medications" and put Plaintiff on a special diet. Tr. 313. In August, Plaintiff saw a physician assistant at her primary care practice, who observed that she had lost weight on the special diet; on physical examination, she noted that Plaintiff was "extremely thin," although other findings were normal. Tr. 419. The PA recommended Ensure but also recorded no vomiting, no abdominal pain and that the nausea persists from noon to 6p.m. Tr. 418-19. In September 2021, Plaintiff saw Dr. Bansal to whom she reported that her nausea and related memory loss had exacerbated in the preceding two months. Tr. 325-26. Also in September 2021, Plaintiff returned to Dr. Wolfgang who noted her report that she feels a little better at the end of the day with the special diet; Dr. Wolfgang noted that Plaintiff had decided to proceed with EGD[5] with Botox and not with surgery, which was another treatment option. Tr. 311. The record does not reflect that either of these interventions was ever pursued. On examination, Dr. Wolfgang made normal findings, including "[n]o muscle wasting." Id.

During 2021, Plaintiff continued to see APRN Calise for medication management; as in 2020, APRN Calise recorded no MSEs or clinical observations. These treating notes reflect Plaintiff's persistent reports of insomnia and nausea, her subjective feeling that "I'm not so good," Tr. 291, but also that, in June 2021, she was able to go on vacation to Jamaica, although she was nauseous while there, Tr. 292, that she was continuing her search for work, Tr. 292, 297, that she and her husband went to dinner and Twin River for his birthday, Tr. 368, and that, sometimes, she was "doing pretty good," Tr. 293, and "was eating what she wants with no

---

[5] "EGD" refers to esophagogastroduodenoscopy.

5

nausea and weight gain," Tr. 500 ("doing better-cautiously optimistic"). As Plaintiff reported to APRN Calise in November 2021, "she has to push herself to function but still does her errands and prepares meals etc." Tr. 501. APRN Calise urged Plaintiff to consider the partial hospitalization program at Butler Hospital or to engage in therapy, but she declined. Tr. 503. At the end of 2021, as reflected in APRN Calise's January 2022 notes, "Xmas pt is having sons and daughter – she is cooking then goes to son's hse on 12-23-21." Tr. 504.

In 2022, the record presented to the ALJ, reflects that Plaintiff saw APRN Calise three times. At these three appointment (in January, February and March), for the first time, APRN Calise recorded MSE observations; these are entirely normal, including "normal recent and remote memory" and "normal attention span and concentration ability." Tr. 507, 509, 512. In contrast to these objective observations, the 2022 notes continue to reflect Plaintiff's subjective reports of "ongoing nausea, diff conc and decreased motion" and "poor quality of life sec impairments," although nausea is "a bit better since on new meds." Tr. 506. Importantly, APRN also noted Plaintiff's statements that "I still function," Tr. 504; that "[d]uring day pt runs errands and sees her children. I made them soup today and I cook every day," Tr. 504; and that "mood is ok," Tr. 508. At the last 2022 encounter in this part of the record, an MSE was performed by Plaintiff's new provider, APRN Arielle Rounds; like those of APRN Calise, APRN Rounds' MSE observations are entirely normal, including normal memory and normal attention and concentration. Tr. 511. APRN Rounds noted, "she is able to function." Tr. 511.

The non-examining psychologists and physicians collectively completed their review of the record as of December 21, 2021. Focused on Plaintiff's depression/anxiety, sleep difficulties and her nausea, the two psychologists noted the contrast between Plaintiff's reports to providers of the inability to function due to nausea/poor mood, and her reports on application that she

drives, shops, prepares meals, can follow instructions and not does need reminders, as well as her resistance to engaging in therapy. They agreed that her difficulties with mood and memory cause moderate functional limitations in the ability to concentrate persist and maintain pace, resulting "some variability in work attendance and in sustaining persistence, pace and concentration over long periods due to severe mood and anxiety sx's." Tr. 111, 118. Despite this "variability," regarding work attendance, both found that Plaintiff remained able to "maintain[] focus for 2-hour periods and of persisting at familiar tasks over a typical 8/5/40 work routine at a moderate work pace." Tr. 114. The psychologist at the reconsideration phase clarified this limitation: "Cl[aimant] can finish simple 1-3 step familiar tasks over the course of a normal 8/5/40 work routine. Cl[aimant] is too distractible to reliably finish complex tasks." Tr. 121. The non-examining physicians also carefully reviewed the record, focused particularly on Plaintiff's claim of chronic nausea; finding only a physical diagnosis of "mild gastroparesis," both opined to no severe impairments. Tr. 111, 118.

In February 2022, APRN Calise signed her RFC opinion. Tr. 492. In contrast to her own finding on MSE of "normal recent and remote memory" and "normal attention span and concentration ability," and at variance with Plaintiff's function report, in which she reported no problem with following instructions, Tr. 238, APRN Calise opined that Plaintiff would "frequently" be unable to remember simple instructions and would "frequently" be unable to maintain attention and concentration "for simple tasks at a reasonable pace." Tr 494. At variance with Plaintiff's statements in her function report, Tr. 237-38, APRN Calise opined that Plaintiff would "frequently" be unable to relate to other people. Tr. 494. And in contrast to the many references in her own treating notes to Plaintiff's ability to function, for example by caring for family, cooking every day, running errands, vacationing in Jamaica, cooking at Christmas for

7

her children and going to dinner/Twin River with her husband, APRN Calise opined that Plaintiff would "frequently" be limited in her activities of daily living (e.g., cleaning, cooking) and her ability to leave the house. Tr. 493. Importantly, APRN Calise did not record any response to the question on the form about absenteeism. Tr. 495. Thus, APRN Calise's opinion does not support Plaintiff's argument that her symptoms would cause her to be absent from work. No other treating source has opined on Plaintiff's RFC; no source has opined that Plaintiff's impairments would cause her to be materially off-task or absent.

On May 1, 2023, the ALJ issued a detailed and thorough decision. In it, he found that the findings of the non-examining physicians were very persuasive, while those of the non-examining psychologists were generally persuasive, provided that he found the more precise limits set by the reconsideration phase psychologist more consistent with the record. Tr. 21-22. Noting its contrast with APRN Calise's own MSE findings and her treating notes regarding Plaintiff's activities, the ALJ found that APRN Calise's opinion was not persuasive. Tr. 22. Similarly, the ALJ found that Plaintiff's subjective statements about the severity of her condition clash materially with her many normal examinations and her reports of her activities, including looking for a job, going out to dinner and to Twin River, running errands, and cooking, as well as her reports to providers that she is able to function. Tr. 20-21. Based on these findings, the ALJ found Plaintiff limited by the ability to perform only simple work involving one-to-three tasks; supported by the non-examining psychologists' findings, his RFC includes no limits based on the absenteeism.

After the ALJ's decision issued, Plaintiff submitted additional 2022 records to the Appeals Council.[6] Of these, some relate to the period in issue. These reflect:

---

[6] As noted *supra*, the Appeals Council submission also included 2018-2020 gynecological records that are pertinent only to the extent that they uniformly reflect normal mental health observations. Tr. 74-86.

- APRN Rounds performed another MSE with entirely normal findings, including normal memory and normal attention and concentration, Tr. 62;

- A gynecologist made entirely normal findings at Plaintiff's annual examination and noted, "[n]o current complaints" and no report of nausea, abdominal pain, vomiting or diarrhea, Tr. 64-69; and

- A psychiatric evaluation was performed by a new psychiatrist who noted Plaintiff's report of fatigue, nausea, melancholia with poor appetite and low energy, but made entirely normal observations on MSE, including "appropriate attention span and concentration." Tr. 36-37.

The Appeals Council submission also includes treating notes applicable after the period in issue; these reflect that treatment continued with another appointment with the psychiatrist and then two appointments with a nurse practitioner in his office. Other than the observation of only "fair" judgment and insight, their post-period MSEs are the same, that is, normal. Tr. 42, 48, 54.

## II. Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a

9

reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981).  The determination of substantiality is based upon an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner.  Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

## II.   Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a).  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.   The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity, the claimant is not disabled.  Id. § 404.1520(a)(4)(i).  Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled.  Id. § 404.1520(a)(4)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.  Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski, 959 F.3d at 434; Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to DIB claims).

    **B.**    **Opinion Evidence**

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.  A "medical opinion" is defined in the regulations as a statement that identifies specific functional "limitations or restrictions" "about what [claimants] can still do despite their impairments."  20 C.F.R. § 404.1513(a)(2).  For purposes of documenting an impairment, a medical opinion must come from an "acceptable medical source," which includes a physician, a psychologist, a licensed advanced practice registered nurse or a licensed physician assistant opining within the scope of licensed practice.  20 C.F.R. § 404.1502.  The most important factors to be considered when the Commissioner evaluates the

11

persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. 20 C.F.R. § 404.1520c(b)(2); <u>Elizabeth V. v. O'Malley</u>, C.A. No. 23-00459-WES, 2024 WL 1460354, at *3 (D.R.I. Apr. 4, 2024), <u>adopted by text order</u> (D.R.I. Apr. 19, 2024). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017). If the ALJ has equally persuasive medical opinions or administrative findings about the same issue that are both supported and consistent but not the same, he is required to articulate the other factors that he relied on to resolve the conflict. 20 C.F.R. § 404.1520c(b)(3).

Other factors that are weighed in light of all of the evidence in the record include the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. <u>See</u> 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5859. "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854. Medical source findings/opinions may not constitute substantial evidence if rendered by a source who was not privy to evidence that would materially detract from the force of the findings. <u>Jonathan G. v. Kijakazi</u>, C.A. No. 22-107MSM, 2022 WL 17580663, at *6 (D.R.I. Dec. 12, 2022), <u>adopted</u>, 2023 WL 4077849 (D.R.I. May 3, 2023); <u>Virgen C. v. Berryhill</u>, C.A. No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018).

    **C.**    **Assessment of Claimant's Subjective Statements**

12

A reviewing court will not disturb a clearly articulated credibility finding based on substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. Guidance in evaluating the claimant's statements regarding the intensity, persistence and limiting effects of subjective symptoms, including pain, is provided by SSR 16-3p, 2017 WL 5180304, at *2-3 (Oct. 25, 2017), which directs the ALJ to consider the entire case record, including the objective medical evidence, the individual's statements, statements and other information provided by medical sources and other persons, and any other relevant evidence, as well as whether the subjective statements are consistent with the medical signs and laboratory findings. Id. at *2-5. As the First Circuit has emphasized, in the absence of direct evidence to rebut a claimant's testimony about subjective symptoms, such statements should be taken as true. Sacilowski, 959 F.3d at 441; Tegan S. v. Saul, 546 F. Supp. 3d 162, 169 (D.R.I. 2021). That is, if proof of disability is based on subjective evidence and a credibility determination is critical to the decision, the subjective statements must either be explicitly discredited or the implication of lack of credibility must be so clear as to amount to a specific credibility finding. Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Vanessa C. v. Kijakazi, C.A. No. 20-363MSM, 2021 WL 3930347, at *4 (D.R.I. Sept. 2, 2021), adopted, 2021 WL 8342850 (D.R.I. Nov. 2, 2021).

**D.     Absenteeism**

When the symptoms of an impairment or combination of impairments would cause the claimant periodically to be unable to attend work, it is reversible error if the ALJ fails specifically to assess the issue of absenteeism. Jacquelyn V., 2023 WL 371976, at *5 (citing Amanda S. v. Berryhill, No. CV 18-0001-JJM, 2019 WL 1316979, at *6-7 (D.R.I. Mar. 22, 2019), accepted by text order (D.R.I. Apr. 8, 2019) (directing award of benefits), affirmed sub nom. Sacilowski, 959 F. 3d 431 (error to fail to consider probable absenteeism caused by

migraines that recur despite medication)).  Remand is similarly required if the ALJ relies on the findings of non-examining physician experts who did not address absenteeism because they did not see records establishing the sheer scope of claimant's many medical concerns.  Jessica S. v. Kijakazi, C.A. No. 21-75MSM, 2022 WL 522561, at *4-6 (D.R.I. Feb. 22, 2022), adopted, 2022 WL 834019 (D.R.I. Mar. 21, 2022) (non-examining experts "did not have access to a sufficiently developed record to permit them even to consider how the total number of medical appointments and hospitalizations would impact work attendance").  That is, it is error for an ALJ to ignore the impact on the ability to work of multiple impairments each of which could impact attendance, particularly where it is "undisputed that [the claimant's medical] issues required ongoing treatment throughout [an extended period]." Sacilowski, 959 F.3d at 435-36; see 20 C.F.R. § 404.1523(b) (requirement for treatment of combined effect of multiple impairments).  And when a treating source's longtime familiarity with a claimant and her ailments confirms that the absenteeism caused by the impairments is work-preclusive, reinforcing the already overwhelming evidence of disability, remand for an award of benefits may be appropriate, despite the claimant's capacity to engage in certain daily home activities.  See Sacilowski, 959 F.3d at 440-41.  On the other hand, it is also clear that the findings of a state agency expert that a claimant can sustain work over a normal workday and workweek on an ongoing basis takes attendance-related limitations into consideration.  Heather D. v. Kijakazi, C.A. No. 23-00122-LDA, 2023 WL 7385107, at *7 (D.R.I. Nov. 8, 2023).

   **F.**  **Appeals Council's Consideration of Newly Submitted Evidence**

  The Appeals Council must review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."

14

20 C.F.R. § 404.970(a)(5); see Catherine I. v. Saul, C.A. No. 19-394WES, 2020 WL 2730907, at *10 (D.R.I. May 26, 2020), adopted by text order (D.R.I. June 18, 2020). When the Appeals Council denies review, the already deferential substantial-evidence standard of review is supplanted by the exceedingly narrow egregious error standard. Mills v. Apfel, 244 F.3d 1, 5 (1st Cir. 2001); Suliman v. Saul, CIVIL ACTION NO. 1:20-CV-11985-RWZ, 2022 WL 3108850, at *3 (D. Mass. Aug. 3, 2022). The Appeals Council's denial of review is afforded "a great deal of latitude" and "great deference." Mills, 244 F.3d at 5-6; David O. v. Berryhill, C.A. No. 18-17WES, 2019 WL 2501884, at *14 (D.R.I. Feb. 13, 2019). In this context, egregious has been interpreted to mean "'[e]xtremely or remarkably bad; flagrant.'" Ortiz Rosado v. Barnhart, 340 F. Supp. 2d 63, 67 (D. Mass. 2004) (quoting BLACK'S LAW DICTIONARY (7th ed. 1999)) (alteration in original). Nevertheless, review is appropriate where the mistake is "explicit" or represents an "egregious error." Mills, 244 F.3d at 5. For example, when a physician's record contains material information that plainly relates back to the period on or before the ALJ's decision, it would be egregious error to refuse to review the case based only on the finding that the new evidence "does not relate to the period at issue" simply because the record is dated shortly after the decision issued. Cabral v. Kijakazi, Civil Action No. 21-10049-PBS, 2022 WL 1211335, at *1 (D. Mass. Apr. 25, 2022).

### III. Analysis

#### A. Challenges to ALJ's Decision

In contrast to the cases on which Plaintiff relies, Sacilowski, 959 F.3d 341, Ogannes B., 2023 WL 5561108; Jacquelyn V., 2023 WL 371976, this is not a case with substantial evidence of absenteeism. Thus, Plaintiff's testimony about her absenteeism in the period preceding the alleged onset date was appropriately discounted because it is squarely contradicted by the

contemporaneous treating records.  Indeed, when asked by her attorney whether she had to use the restroom a lot just before she stopped working, as in Denise D. v. O'Malley, C.A. No. 23-233-PAS, 2024 WL 3329473, at *5-6 (D.R.I. July 8, 2024), Plaintiff said she did not have that problem.  Tr. 98-99.  APRN Calise was asked, but declined, to opine to absenteeism; that is, despite her opinion that Plaintiff "has been unable to work," APRN Calise left the part of the form related to absenteeism blank.  Thus, there is no opinion from any source that Plaintiff's impairments would make her materially off-task or absent.  Nor do any of the treating notes contain substantial evidence of absenteeism.  And, unlike Sacilowski, the non-examining psychologists in this case specifically considered the impact of Plaintiff's impairments on her ability to attend and persist over the course of a "8/5/40 work routine" schedule and found that she could.  See Heather D., 2023 WL 7385107, at *7 (findings of a state agency expert that a claimant can sustain work over a normal workday and workweek on an ongoing basis takes limitations arising from off-task time or absenteeism into consideration).  Therefore, the evidence that Plaintiff was not materially limited by absenteeism is substantial and the only contrary evidence was appropriately afforded little weight.  I find no absenteeism error and do not recommend remand on that basis.

Plaintiff's Step Two challenge, which focuses only on nausea,[7] is equally uncompelling.  For starters, the ALJ's Step Two finding of "no severe impairment" is grounded on consideration of Plaintiff's nausea as a gastrointestinal impairment, supported by the diagnosis of mild gastroparesis; the ALJ's decision at Step Two thus examined the impact of nausea on Plaintiff's exertional and postural abilities and found it to be non-severe in reliance on the non-examining

---

[7] The ALJ's Step Two findings addresses an array of other impairments.  Because Plaintiff has challenged only the ALJ's treatment of her nausea/gastroparesis at Step Two, I have dealt only with that issue.

16

physicians.[8]  Importantly, nausea and its adverse impact on Plaintiff's ability to concentrate, attend, persist, remember and understand was found to be severe and the ALJ's analysis of that perspective of nausea proceeded to the RFC phase of the case.  Thus, this is a case where the Step Two challenge founders on the "well-settled principle that a claimant cannot demonstrate harmful error at Step Two unless the failure to make severity findings ends the analysis."  White v. Colvin, No. 14-171, 2015 WL 5012614, at *8 (D.R.I. Aug. 21, 2015).

I also find no error in the ALJ's RFC determination.  His treatment of the Calise opinion is amply supported by substantial evidence.  While the parties quibble over the correct interpretation of Sacilowski, this case is not a close call in that that, as summarized above, ALJ recites directly contradictory evidence that conflicts with each of APRN Calise's material findings, as well as noting the overall conflict between the Calise opinion and Plaintiff's normal MSE findings, both those made by ARPN Calise herself and those made by APRN Rounds.  Similarly, the ALJ's treatment of Plaintiff's subjective statements is appropriately based on direct contradictions that appear in the treating record and the function report.  That leaves the ALJ's nuanced reliance on the non-examining psychologists, which also is error free.  I recommend that the ALJ's RFC determination be affirmed.

      B.      **Challenge to Appeals Council's Decision**

As summarized above, the evidence submitted to the Appeals Council does not detract from but confirms that this is a case where "a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion."  Samantha D. v. O'Malley, C.A. No. 22-464MSM, 2023 WL 8889659, at *6 (D.R.I. Dec. 26, 2023), adopted,

---

[8] Plaintiff's blunderbuss attack on these findings falls far short of the mark.  These physicians deployed their expertise to examine the treating record, including the results from clinical examination and clinical testing.  Notably, no medical source has opined that either Plaintiff's mild gastroparesis or her chronic nausea impacted her ability to function physically.

2024 WL 1214555 (D.R.I. Mar. 21, 2024).  I do not find any error, never mind one that could be deemed to be egregious.

## IV.    Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner (ECF No. 12) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED.

Any objections to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen days of service of this report and recommendation.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72.  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See Brenner v. Williams-Sonoma, Inc., 867 F.3d 294, 297 n.7 (1st Cir. 2017); Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 20, 2024